## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

REPRESENTATIVE ALVIN L. HEGGE,
UNDER FED.R.CIV.P. RULE 23(a),
JEFFREY ZIEGLER, RYAN GENTZLER,
EUGENE B. GARVIE, JOSH HEGRE,
STEVEN BURR, WILLIAM RICHIE,
SERGIO PERALTA, PAT NELSON,
JACOB CLARK, THOMAS GILBERT,
DARRIN MAIDEN, JOSEPH MOORE,
RANDY DEMARAY, BRIAN CHAMPACO,
CHRISTOPHER SHADE, ROBERT THIERY,
CHRISTOPHER BOWMAN, ANDREW SKYBERG,

Plaintiff(s),

vs.

JAY INSLEE, ROBERT FERGUSON,
TODD COLEMAN, DALE CALDWELL,
JOHN THOMPSON, RNW ESCHBACH,
RICHARD MORGAN, ROBERT HERZOG,
MARGRET GILBERT, TIM THRASHER,
ARLEE ROTHWELL, DENNIS CHERRY,
GREGORY JONES, DENNISE BREWER,
STEVEN SINCLAIR, JOHN ALDANA,
KERRI MCTARSNEY, ANICA MIZIN,
TOMAS P. FITHIAN, RON HAYNES,
KELLY DOWNING, JENEVA COTTON,
SCOTT RUSSELL, BARRY DEHAVEN,
VALINTINA LOPEZ, JAMES JOLLY,
ERIN LYSTAD, DANIEL VAN OGLE,
R. HERRINGTON MD, CARLOS LUGO,
WA JOHN DOE SECRETARY OF STATE,
JOHN DOE AT WA HEALTH DEPARTMENT,
CORRECTIONAL INDUSTRIES, PAM PURDUE,
GRAYS HARBOR COUNTY HEALTH DEPARTMENT,
RICHARD CREATURA, TYLER CAMPBELL,
DENNIS DAHNE, RICHARD ROBERTS,
JOHN THOMPSON, DOUG MATTHEWS,
HOWARD YARDELY, WILLIAM LANE,
RICHARD ESTES, RANDAL MIEKLER,
CHANDLER MARTIN, JASON COUEY,
DONALD MILLER, DAVID PARTOVI,

Defendant(s),

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 18, 2020

SEAN F. McAVOY, CLERK

Cause No:    2:20-CV-425-RMP

REQUEST FOR CLASS
CERTIFICATION UNDER
FED.R.CIV.P.  23(c)

CIVIL RIGHTS COMPLAINT WITH JURY TRIAL DEMAND UNDER
PROVISIONS OF TITLE 42 U.S.C. §§ 1983, 1985 AND 1986

<u>PLAINTIFF(S) NAMES AND ADDRESSES</u>

Representative Alvin Hegge under Fed.R.Civ.P. Rule 23(a), Jeffrey Ziegler, Ryan Gentzler, Eugene Garvie, Josh Hegre, Steven Burr, William Richie, Sergio Peralta, Pat Nelson, Joseph Moore, Randy Demaray, Brian Champaco, Christopher Shade, Andrew Skyberg, Christopher Bowman, Jacob Clark, Robert Thiery, Darrin Maiden. Address: Stafford Creek Corrections Center, 191 Constantine Way, Aberdeen, Washington 98520.

<u>DEFENDANT(S) NAMES AND ADDRESSES</u>

Jay Inslee, P.O. Box 40002, Olympia, WA 98504-0002.

Robert Ferguson, P.O. Box 40116, Olympia, WA 98504-0116.

Robert Herzog, Tim Thresher, Steven Sinclair, Richard Morgan, Dale Caldwell, Scott Russell, Tomas P. Fithian, Carlos Lugo, John Aldana, P.O. Box 41100, Olympia, WA 98504-1100.

Individual Capacity John Doe Secretary of State, P.O. Box 40220, Olympia, Washington 98504-0220.

Individual Capacity John/Jane Doe and/or John/Jane Doe(s) at Washington State Department of Health, Public Health Department, 111 Israel Rd. SE, Tumwater, Washington 98501.

Municipality Legal Personage Grays Harbor County Public Health Department, 2109 Summer Ave. #201, Aberdeen, Washington 98520.

Municipality Legal Personage Correctional Industries, P.O. Box 41107, Olympia, WA 98504-1107.

SCCC Superintendent Ron Haynes, Jeneva Cotton, Margaret Gilbert, John Thompson, R. Herrington MD, RN3 Eschbach, Erin Lystad, Daniel Van Ogle, Dennis Dahne, Kerri S. McTarsney, Arlee Rothwell, Dennis Cherry, Gregory Jones, Dennise Brewer, Kelly Downing, Valintina Lopez, Barry DeHaven, Todd Coleman, Anica Mizin, James Jolly, Pam Purdue, Dennis Dahne, William Lane, Paul Nelson, Doug Mathhews, Howard Yardely, Richard Roberts, Richard Estes, Randal Miekler, Chandler Martin, and Paul Nelson. Address: Stafford Creek Corrections Center, 191 Constantine Way, Aberdeen, Washington 98520.

Donald Miller, and David Partovi, 900 N. Maple, STE. LL, Spokane, Washington 99201.

Jason Couey, 400 S. Jefferson St. Ste. 204, Spokane, Washington 99204.

Richard Creature and Tyler Campbell, 1717 Pacific Avenue, Tacoma, Washington 98402.

## SCOPE OF DISTRICT COURT JURISDICTION

This Civil Rights Action is filed under the jurisdictional zone of interest of Title 42 U.S.C. §§ 1983 and 1985, giving rise to federal question jurisdiction, see Title 28 § 1331. Federal question:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

The scope of federal court jurisdiction as found in the United States Constitution under Article III, Section 1, is restricted by the Eleventh Amendment:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State.

This civil Rights Complaint is filed exclusively against individual capacity Defendant(s) legal personage, and specifically is not conferring any jurisdiction to this District Court over any official capacity legal personage; thereby the Washington Attorney General lacks lawful representative authority and/or standing to appear on behalf of any of the individual capacity or municipal capacity Defendant(s) in this civil rights complaint. However, individual capacity Defendant(s) may present an official capacity defense to the jury at trial on the merits, and call the Attorney General as a witness to establish any defense that alleged individual capacity challenged conduct was carried out pursuant to valid State policy or law; however, taking into account that an individual purporting to be acting under color of State law, that acts in violation of the United States Constitution or law, loses his or her representative authority and places their personal assets at risk.

Plaintiff(s) have alleged Defendant(s) participated in a § 1985 conspiracy which in and of itself is a substantive offense conceptually distinct from a conspiracy theory of liability under § 1983 which requires proof of the substantive offense alleged; whereas a Title 42 U.S.C. § 1985(2) and (3) civil conspiracy is the counterpart to Title 18 U.S.C. §§ 241 and 242 criminal conspiracy and affords no judicial, quasi judicial, prosecutorial, qualified and/or good faith immunity to any of the named Defendant(s).

Plaintiff(s) have further alleged that Defendant(s), in concert with one another, aided and abetted collective Defendant(s)' objectives, "having power to prevent or aid in preventing the completion of" the overt acts and substantive objectives of the herein alleged § 1985 conspiracy, in violation of Title 42 U.S.C. § 1986.

## RULE 23 CLASS REPRESENTATIVE

<u>California v. Yamasaki</u>, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979):

> The fact that a federal statute speaks in terms of an action brought by an individual or that it contemplates case-by-case adjudication does not indicate that the usual rule providing for class actions (Rule 23 of Federal Rules of Civil Procedure) is not controlling, where under that rule certification of a class otherwise is permissible.

> Rule 23 of Federal rules of Civil Procedure provides a procedure where a federal District Court has jurisdiction over the claim of each individual member of a class by which the court may exercise jurisdiction over the various individual claims in a single proceeding"

<u>Gen Telephone Co. of Southwest v. Falcon</u>, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982):

> An individual litigant seeking to maintain a class action must meet Fed.R.Civ.P. 23(a)'s specified "prerequisites of numerousity, commonality, typicality, and adequacy of representation," may seek class order relief without being certified as the class representative.

<u>Turner v. International Brotherhood of Teamsters, etc.</u>, 604 F.2d 1219 (1979):

> This is an appeal by Cecil Turner, a retired employee of the dairy industry, as class representative.

<u>Cummings v. Connell</u>, 402 F.3d 936 (9th Cir. 2005):

> We agree with the approach taken by the courts that have recognized that each class member whose constitutional rights were violated is entitled to nominal damages. Once a class has been certified, there is no justification for awarding nominal damages to only the named class representatives. Class action litigation is a procedural mechanism designed to join multiple parties with similar or identical claims, so that they may seek redress in an efficient and expeditious manner. <u>Eyak Native Village v. Exxon Corp.</u>, 25 F.3d 773, 781 (9th Cir. 1994).

> One of the goals of class action litigation is to save the resources of both the courts and the parties "by permitting an issue potentially every [class member] to be litigated in an economical fashion under

(4)

Rule 23." <u>Califano v. Yamasaki</u>, 442 U.S. 682, 701, 61 L.Ed.2d 176, 99 S.Ct. 2545 (1979). This is accomplished in part by allowing the class to proceed on a representative basis; a class representative functions as a stand-in for the entire class and assumes duties on behalf of the class. See <u>Gen. Tel. Co. of the Southwest v. Falcon</u>, 457 U.S. 147, 155, 72 L.Ed.2d 740, 102 S.Ct. 2314 (1982)(acknowledging that class actions present the exception to the rule that litigation is to be conducted by and on behalf of the individually named parties. Nevertheless, while class representatives stand in the stead of their fellow class members, Rule 24 recognizes that the absent class member's rights must be scrupulously observed. Fed.R.Civ.P. 23 (requiring that the class representative fairly and adequately represent the interest of the absent class members).

<u>Lewis, Arizona DOC v. Casey</u>, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)(Justice Scalia delivered the opinion):

Respondents are 22 inmates of various prisons operated by ADOC. In January 1990, they filed this class action "on behalf of all adult prisoners who are or will be incarcerated by the State of Arizona Department of Correction," App. 22, alleging that petitioners were "depriving [respondents] of their rights of access to the courts and counsel protected by the First, Sixth, and Fourteenth Amendments," Id., at 34. Following a 3-month bench trial, the District Court ruled in favor of respondents, finding that "prisoners have constitutional right of access to the courts that is adequate, effective and meaningful," 834 F. Supp. 1553, 1566 (1992), citing Bounds, Supra, at 822, 52 L.Ed.2d 72, 97 S.Ct. 1491, and that "k[ADOC's] system fails to comply with constitutional standards," 834 F. Supp., at 1569. The court identified a variety of shortcomings of the ADOC system, in matters ranging from the training of library staff, to the up dating of legal materials, to the availability or photocopying services. In addition to those general finding, the court found that two groups of inmates were particularly affected by the system's inadequacies: "lockdown prisoners" (inmates segregated from the general prison population for disciplinary or security reasons), who "are routinely denied physical access to the law library" and "experience severe interference with their access to the courts," id., at 1556; and illiterate or non-English speaking inmates, who do not receive adequate legal assistance, id., at 15558.

<u>West v. Conrail, Inc.</u>, 107 S.Ct. 1538 (1987)
<u>Schiavone v. Fortune</u>, 106 S.Ct. 2379 (1986)

(5)

<u>AMERICANS WITH DISABILITIES ACT PROTECTIONS</u>

<u>28 U.S.C. Section 35.134.</u> Retaliation or Corercion.

Section 35.134 implements section 503 of the ADA, which prohibits retaliation against any individual who exercises his or her rights under the Act. This section is unchanged from the proposed rule. Paragraph (a) of §35.134 provides that no private or public entity shall discriminate against any individual because that individual has exercised his or her right to oppose any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under the Act or this part.

Paragraph (b) provides that no private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise of his or her rights under this part or because that individual aided or encouraged any other individual in the exercise or enjoyment of any rights granted or protected by the Act or this part.

This section protects not only individuals who allege a violation of the Act or this part, but also any individuals who support or assist them. This section applies to all investigations or proceedings initiated under the Act or this part without regard to the ultimate resolution of the underlying allegations. Because this section prohibits any act of retaliation or coercion in response to an indivudal's effort to exercise rights established by the Act and this part (or to support the efforts of another individual), the section applies not only to public entities subject to this part, but also to persons acting in an individual capacity or to private entities. For example, it would be a violation of the Act and this part for a private individual capacity or to private entities. For example, it would be a violation of the "Act and this part for a private individual to harass or intimidate an individual with a disability in an effort to prevent that individual from attending a concert in a State-owned park. It would, likewise be a violation of the Act and this part for a private entity to take adverse action against an employee who appeared as a witness on behalf of an individual who sought to enforce the Act.

§ 35.134. Retaliation or Coercion.

(b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise of enjoyment of, any right granted or protected by the Act or this part.

## SERVICE ON DEFENDANT(S) IS ESSENTIAL CONDITION PRECEDENT
## TO CONFER COMPETENT JURISDICTION OVER THE SUBJECT MATTER

An action is commenced upon filing the action in Court,
West v. Conrail, 481 U.S. 35, 107 S.Ct. 1538, 95 L.Ed.2d 32
(1987); because "Fed.R.Civ.P. 3 says that '[a] civil action
is commenced by filing a complaint with the court,'" McNeil
v. U.S., 964 F.2d 647 (7th Cir. 1992), affirmed by the
Supreme Court in, McNeil v. U.S., 508 U.S. 106, 113 S.Ct.
1980, 124 L.Ed.2d 21 (1993); for filing of a complaint
begins the action, Baldwin County Welcome Center v. Brown,
466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984);
however, "service of summons is the procedure by which a
court ... asserts jurisdiction over the person of the party
served," Mississippi Publishing Corp. v. Murphree, 326 U.S.
438, 444-445, 66 S.Ct. 242, 90 L.Ed. 185 (1946); therefore,
"in the absence of service of process (or waiver of service
by the defendant), a court ordinarily may not exercise power
over a party the complaint names as defendant," Murphy Bros
v. Michetti Pipe Stringing, 526 U.S. 344, 119 S.Ct. 1322,
143 L.Ed.2d 448 (1999); which is well established law, see
Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22
(1940)("A person is not bound by a judgment in persona in a
litigation in which he ... has not been made a party by
service of process"); Lee v. Western Processing Company, 35
Wn.App. 466, 667 P.2d 638 (1983)("Proper service of the
summons and complaint was necessary to invoke the court's
jurisdiction ... a judgment entered without jurisdiction
over the parties is void").

## PLEADING REQUIREMENTS HAVE BEEN SATISFIED

Plaintiff(s) have attached hereto and hereby incorporate herein by reference attached Exhibits (1) through (20), paginated (1) through (383), under authority of Fed.R.Civ.P. Rule 10. Form of Pleadings.

(c) Adoption by Reference; Exhibits. Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.

This Civil Rights Complaint is filed under the zone of interest of Title 42 U.S.C. §§ 1983, 1985 and 1986, with representative authority for Alvin Hegge under purview of Fed.R.Civ.P. Rule 23(a) in addition to application of Fed.R.Civ.P. Rule 17(a) and (c) with Alvin Hegge functioning in the legal personage of Next Friend within the spirit and intent of Fed.R.Civ.P. Rule 17, premised on the fact that several of the herein named Defendant(s) are ADA qualified along with other legal disabilities covered under Fed.R.Civ.P. Rule 17(a) and (c).

Plaintiff(s) have properly joined all herein encompassed claims and remedies within the meaning of Fed.R.Civ.P. Rule 18. Joinder of Claims and Remedies:

(a) Joinder of Claims. A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.

Plaintiff(s) believe they have named all essential "Persons Needed for Just Adjudication," within meaning of Fed.R.Civ.P. Rule 19; and have properly joined all persons and/or Defendant(s) necessary for adequate adjudication of this Civil Rights Complaint, including but not limited to Title 42 U.S.C. § 1986 "any number or persons guilty of such wrongful neglect or refusal may be joined as defendants in the action," in compliance with Fed.R.Civ.P. Rule 20. Permissive Joinder of Parties:

(a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

## FED.R.CIV.P. 8 CONTROLLING SUPREME COURT PRECEDENT

Johnson v. City of Shelby, 574 U.S. 10, 135 S.Ct. 346, 190 L.Ed.2d 309 (2014)(Per Curian):

Plaintiffs below, petitioners here, worked as police officers for the City of Shelby, Mississippi. The allege that they were fired by the city's board of aldermen, not for deficient performance, but because they brought to light criminal activities of one of the aldermen. Charging violations of their Fourteenth Amendment due process rights, they sought compensatory relief from the city. Summary judgment was entered against them in the District Court, and affirmed on appeal, for failure to invoke 42 U.S.C. § 1983 in their complaint.

We summarily reverse. Federal pleading roles call for "a short and plaint statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted. See Advisory Committee Report of October 1955, reprinted in 12A C. Wright, A. Miller, M. Kane, R. Marcus, and A. Steinman, Federal Practice and Procedure, p. 644 (2014 ed)(Federal Rules of Civ. Procedure" are designed to discourage battles over mere form of statement"); 5. C. Wright & A. Miller, § 1215, p. 172 (35d. 2002)(Rule 8(a)(2) "indicates that a basic objective of the rules is to avoid civil cases turning on technicalities"). In particular, no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional right too invoke § 1983 expressly in order to state a claim. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)(A federal court may not apply a standard more stringent than the usual pleading requirements of Rule 8(a)" in "civil right" cases alleging municipal liability"); Swierkicwicz v. Sorema N.A., 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)(Imposing a "heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2)").

Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1084 (2007)(per curian):

He alleged that a liver condition resulting from hepatitis C required a treatment program that officials had commenced but then wrongfully terminated, with life threatening consequences. Deeming these allegations, and others to be noted, to be "conclusory," the Court

Page 1

(9)

of Appeals for the Tenth Circuit affirmed the District Court's dismissal of petitioner's complaint, 198 Fed.Appx 698 (2006). The holding departs in so stark a manner from the pleading standard mandated by the Federal Rules of Civil Procedure that we grant review. We vacate the court's judgment and remand the case for further consideration.

Fed.R.Civ.P. 8(a)(2) requires only a short and plaint statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary, the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007):

Our legal system, however, remains committed to guranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law.

Bell Atlantic Corp, v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007):

Stating a 1 [Sherman Act] claims requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made as allegation of parallel conduct and a bare assertion of conspiracy will not suffice.

Swierkicwicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002):

To provide a short and plain statement of the claim showing that the pleader is entitled to relief, as is required to satisfy pleading requirements, a complaint must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests; under simplified standard for pleading set forth in Federal Rules of Civil Procedure, a court may dismiss a complaint only if it is clear that no relief could be proved consistent with the allegations; if a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement before responding, and moreover, claims lacking merit may be dealt with through summary judgment; Federal Rules of Civil Procedure establish a pleading standard without regard to whether a claim will succeed on the merits, and while it may appear on the face of the pleading that a recovery is very remote and unlikely, that is not the test in determining whether a complaint is sufficient.

Page 2                        (10)

LEGAL THEORIES OF PROSECUTION IN THIS CIVIL RIGHTS COMPLIANT

Herein named Plaintiff(s) allege that herein named Defendant(s), one and all, entered into an unlawful explicit and/or implicit agreement to violate Plaintiff(s) Constitutionally protected rights, privileges and immunities, supported by attached Exhibits (1) through (20), paginated (1) through (383), in support of the herein factual allegations and causes of action.

Defendant(s) are sued only in their individual capacity and do not enjoy any Eleventh Amendment immunity, because there is no official capacity legal personage allegations in this Title 42 U.S.C. §§ 1983 and 1985 lawsuit.

Plaintiff(s) are charging a conspiracy under § 1985 where the act of one Defendant is the act of all Defendant(s) under the so-called Pinkerton theory; and it will be a jury question as to whether there is multiple conspiracies under the Supreme Court's decision in Broce or a single conspiracy no matter how diverse its objectives under the Supreme Court's Braverton theory.

As to the substantive violations alleged, Plaintiff(s) will prove at jury trial on the merits that Defendant(s) acted in dual and/or multiple legal personages in carrying out their alleged constitutional wrongs, by vehicle of conspiracy and/or aiding and abetting with purpose to accomplish a unlawful objective through lawful means, accomplish a lawful objective through unlawful means, and/or accomplish and unlawful object through unlawful means; whereas Defendant(s) challenged conduct will be proven to be interrelated and/or interdependent on various unlawful objectives and/or as applied to various substantive offenses and/or causes of actions herein charged.

Plaintiff(s) allege that herein named supervisory legal personage Defendant(s) have each either participated directly and/or indirectly in the herein alleged constitutional wrongs, and/or failed to act to correct said constitutional wrong and/or wrongs once supervisor was made aware of said alleged constitutional wrongs.

Plaintiff(s) allege that each individual Defendant, including but not limited to Defendant(s) from, or acting in behalf of, the Washington Attorney Generals Office, are not entitled to representation within the purview of Chapter 4.92 RCW, and any purported representation by the Washington Attorney General's Office, purportedly pursuant to DOC 130.200, will be challenged on its face, and as applied to requirement that Defendant(s) requesting representation by the State of Washington, that any such Defendant would have to relinquish control and direction of case in its entirety which as matter of law constitutes subrogation.

(11)

## TITLE 42 U.S.C. § 1985 CONSPIRACY ALLEGATIONS
## STRIPS STATE OFFICIALS OF ANY TYPE OF IMMUNITY

Bender v. Williamsport Area School District, 475 U.S. 534, 542, n. 6, 106 S.Ct. 1326, 1332, n. 6, 89 L.Ed.2d 50-51 (1986):

> Acts performed by the same person in two different capacities are generally treated as the transactions of two different legal personages.

Karcher v. May, 484 U.S. 72, 108 S.Ct. 388, 98 L.Ed.2d 327 (1987):

> The concept of legal personage is a practical means of identifying the real interest at stake in a lawsuit. We have repeatedly recognized that the real party in interest in an official capacity suit is the entity represented and not the individual office holder.

Popasan v. Allain, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986):

> This holding [Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)] is based on a determination that an unconstitutional state enactment is void and that any action by a state official that is purportedly authorized by that enactment cannot be taken in an official capacity since the State authorization for such action is a nullity. As the Court explained in Young itself: "If the act which the State Attorney General seeks to enforce be a violation of the Federal Constitution the officer proceeding under such enactment comes into conflict with the superior authority of the Constitution, and he is in that case stripped of his official representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States. Id. at 159-160, 52 L.Ed. 714, 28 S.Ct. 441. Thus, the official, although acting in his official capacity, may be sued in federal court. See also Pennhurst supra at 102, 105, 79 L.Ed. 67, 104 S.Ct. 90; Hatto v. Finney, 437 U.S. 678, 692, 57 L.Ed.2d 522, 98 S.Ct. 2565 (1978)".

Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)("Misuse of power because wrongdoer was clothed with the authority of State law, of which strip defendants of official or representative character subjecting them to personal consequences")

Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991)("State officers sued in their personal capacity come to court as individuals")

Moreau v. Klevanhagan, 508 U.S. 22, 113 S.Ct. 1905, 123 L.Ed.2d 584 (1993)(An attorney must have "lawful representative authority")

Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)(Attorney-Client is traditional agency law relationships governed by "traditional agency law criteria for identifying master-servant relationship")

Kay v. Ehrler, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991)("The word attorney assumes in agency relationship")

Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)("A suit challenging the constitutionality of a state official's action is not one against the state within the meaning of the Eleventh Amendment immunity of a state from suit")

Hampton v. Hanrahan, 600 F.2d 600 (7th Cir. 1979), reversed on other grounds 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980)(Distinguishing between legal personage of acting as federal agent and State agent resulting from conspiracy with State agent, the federal agent assumed the legal personage of State agent through conspiracty)

Tower v. Glover, 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984)(Distinguishing between the legal personage of a "private person" attorney and legal personage resulting from conspiring with State actor elevating "private person" attorney legal personage to under color of State law within the meaning of Title U.S.C. § 1983)

Forester v. White, 484 U.S. 219, 100 S.Ct. 538, 98 L.Ed.2d 555 (1988)(Holding that a Judge is not afforded immunity for hiring or firing a probation officer even though statutorily within his duties, under "functional analysis" because it is not traditionally a judicial function)

Kay v. Ehrler, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991)(Distinction between attorney in functional capacity as providing assistance to someone else and appearing pro se representing himself regarding "legal personage" distinction between individual capacity liability and official capacity liability under the law)

Karcher v. May, 484 U.S. 72, 108 S.Ct. 388, 98 L.Ed.2d 317 (1987)(Method of distinguishing "legal personage" pursuant to "functional analysis")

United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966):

    Private individuals were criminally liable under §

242, if they were willful participants in joint activity with the State or its agents ... § 241 reached assaults upon right s under the entire Constitution, including rights under the due process clause of Fourteenth Amendment," 18 U.S.C. §§ 241 & 242.

U.S. v. Lanier, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 437 (1997):

Statute that makes it criminal to act willfully and under color of state law to deprive person of rights protected by Constitution or laws of United States encompasses rights protected by due process clause of Fourteenth Amendment. 18 U.S.C. §§ 241 & 242.

Owen v. City of Independence, Mo., 446 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980):

Governmental entity has no immunity from liability under the Civil Rights Act flowing from its constitutional violations and may not assert the good faith of its officers as a defense to such liability.

Wyatt v. Cole, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992):

Qualified immunity was not available to private litigant and his attorney in § 1983 action against them for securing relief under Mississippi replevin statute, later determined to be unconstitutional. 42 U.S.C.A. § 1983.

Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 111 S.Ct. 2077, 115 L.Ed.2d 965 (1991):

Test to determine whether constitutional deprivation caused by private party [individual functioning in legal personage of "conspirator"] involves 'state action' is whether claimed deprivation resulted from exercise of a right or privilege having its source in state authority, and whether private party charged with the deprivation can be described in all fairness as state actor.

Jones v. City of Chicago, 856 F.2d 985 (7th Cir. 1998):

Requirements for establishing participation in a conspiracy are the same as in a criminal or civil case in which conspiracy is a substantive wrong.

Rios v. Lane, 812 F.2d 1031 (7th Cir. 1987):

Government officials are charged not only with knowledge of general legal principles, but also with their application in similar or analogous circumstances.

(14)

TITLE 42. THE PUBLIC HEALTH AND WELFARE CHAPTER 21
CIVIL RIGHTS

Title 42 U.S.C. § 1986. Action for Neglect to Prevent
Conspiracy.

Every person who, having knowledge that any of the
wrongs conspired to be done, and mentioned in the
preceding section [42 USCS § 1985], are about to be
committed, and having power to prevent or aid in
preventing the commission of the same, neglects or
refuses so to do, if such wrongful act be committed,
shall be liable to the party injured, or his legal
representatives, for all damages caused by such
wrongful act, which such person by reasonable diligence
could have prevented; and such damages may be recovered
in an action on the case; and any number of persons
guilty of such wrongful neglect or refusal may be
joined as defendants in the action, and if the death of
any party be caused by any such wrongful act and
neglect, the legal representatives of the deceased
shall have such action therefor, and may recover not
exceeding five thousand dollars damages therein, for
the benefit of the widow of the deceased, if there be
one, and if there be no widow, then for the benefit of
the next of kin of the deceased. But no action under
the provisions of this section shall be sustained which
is not commenced within one year after the cause of
action has accrued.

Title 42 U.S.C. § 1988. Proceedings in Vindication of Civil
Rights.

(a) Applicability of Statutory and Common Law. The
jurisdiction in civil and criminal matters conferred on
the district and circuit courts. (district courts] by
the provisions of this title, and of title "Civil
Rights," and of title "Crimes," for the protection of
all persons in the United States in their civil rights,
and for their vindication, shall be exercised and
enforced in conformity with the laws of the United
States, so far as such laws are suitable to carry the
same in to effect, but in all cases where they are not
adopted to object, or are deficient in the provisions
necessary to furnish suitable remedies and punish
offenses against law, the common law, as modified and
changed by the constitution and statutes of the State
wherein the court having jurisdiction of such civil or
criminal cause is held, so far as the same is not
inconsistent with the Constitution and laws of the
United States, shall be extended to and govern the said
courts in the trial and disposition of the cause, and,
if it is of a criminal nature, in the infliction of
punishment on the party found guilty.

(15)

## FIRST CAUSE OF ACTION

Plaintiff(s) allege that Defendant(s) herein challenged conduct violated, and continues to violate, Plaintiff's Fifth, Eighth, and Fourteenth Amendment rights of the United States Constitution's rights and protections to be incarcerated in a reasonable safe environment, by forcing Plaintiff(s) to ingest harmful and cancer causing pesticide sanitizer contaminating food trays, cups and sporks that is mixed in with the greasy residue left on eating trays, cups and sporks.

1.1 As evidenced by above SYNOPSIS OF EXHIBITS IN SUPPORT OF CAUSES OF ACTION, Defendant(s) opted to remove the dishwasher at SCCC Kitchen food services, apparently proximately caused by a contract between WA-DOC and Correctional Industries, which is licensed as a municipality, and replaced the dishwasher with a system of cleaning the dishes by scrubbing them in a tank of soapy water, then dipping the dishes in a tank of rinse water, followed by dipping the dishes in a tank filled with pesticide sanitizer.

1.2 Following the removal of the dishwasher and implementation of the three tank dish cleaning process, Defendant(s) began getting periodically diarrhea and vomiting, along with other adverse affects, in epidemic proportions of the prison population.

1.3 Defendants then implemented a serving food on paper plates for the prison staff, evidencing consciousness of guilt by Defendant(s), who to this date do not feed prison staff off of dishes cleaning said three tank process.

1.4 Plaintiff(s) made Defendant(s) aware that they were getting sick, that the grease and food residue was not being removed from the dishes because the food trays, sporks and cups were greasy wet and wiped with a clean napkin, showed that food such as pasta sauce turned the napkin red; culminating in the SCCC Grievance Department investigating and finding that inadequate cleaning of the dishes was causing Inmates to get sick, thereby directing the SCCC Food Service to do a better job cleaning the dishes.

1.5 SCCC Food Service ignored the fact that the dishes were not being cleaned properly, but instead enlisted the assistance of the SCCC Grievance Department personnel to reject any Inmate complaints and to cause Plaintiff(s) who filed Grievances against the flawed three tank dish cleaning process to be retaliated against by prison staff, and to work in concert with other prison officials to confiscate legal documents from Alvin Hegge and other Plaintiff(s) that would advance litigation against the inadequate and dangerous dish cleaning process.

Page 1

1.6 Defendant(s) do not deny Plaintiff(s) allegations and admit that the three tank dish cleaning process being used creates the alleged health hazard, however, although DOC Headquarters acknowledges the problems with the three tank dish cleaning process, DOC Headquarters justifies inaction in correcting the problem by stating, "You suggested remedy reinstall dishwashers has unsuccessfully been attempted by the SCCC Food Manager," in a Generic Grievance filed by Plaintiff(s), Log I.D. Number 19684310.

1.7 Defendant(s) have consistently ignored the undeniable health hazard created by failure to adequately clean and sanitize the dishes, and consistently rely on the "this method is approved by the WA State Department of Health," see Log I.D. Number 19682424, Appendix page 266, in pertinent part:

    The newly implemented dish cleaning procedure signed by Inmate Kitchen workers at SCCC kitchen, creates an unconstitutional health hazard because when the Inmates lift the trays, sporks and cups out of the soapy scrub water, the soap and grease floating on top of the water is reintroduced to the trays, for example, then the trays are dipped in the rinse water where the soap and grease film stays floating on top of the rinse water and is again reintroduced to the food trays, that are then submerged in the sanitizer tank, diluting and neutralizing the potency of the sanitizer, thereby not killing the harmful bacteria that the sanitizer was meant to kill; that have a grease film contaminated with detergent and sanitizer which is unacceptable and substantial health hazard including but not limited to, causing me to have symptoms of food poisoning, vomiting, diarrhea, along with grave potential for long term adverse effects such as cancer.

SUGGESTED REMEDY:
    Either install a diswasher or establish a dish washing procedure that does not reintroduce the detergent and grease film that is inherently floating on top of the wash and rinse tank so that no detergent residue or grease film is transferred into the sanitizer tank; and create a system to where the dishes are checked to make sure there is not greasy film left on them and that they are thoroughly dried prior to me eating off of them.

PART B - LEVEL I RESPONSE
    SCCC food service uses a three compartment sink method ... this method is approved by the WA State Department of Health. All incarcerated individuals who are assigned to the dish tanks are given training in this process as well as refresher training every two to three months....

Page 2

## SECOND CAUSE OF ACTION

Plaintiff(s) allege that Defendant(s) herein challenged conduct violated, and continues to violate, Plaintiff's First, Fifth and Fourteenth Amendment rights of the United States Constitution's rights and protection to be free from retaliation by Defendant(s) with purpose to chill, interfere with, and obstruct Plaintiff(s) access to our courts rights to challenge Defendant(s) unlawful conduct regarding forcing Plaintiff(s) to ingest Harmful and cancer causing pesticide sanitizer contaminating food trays, cups and sporks at the SCCC dinning hall, that is mixed in with the greasy residue left on eating trays, cups and sporks.

2/1 As evidenced by above SYNOPSIS OF EXHIBITS IN SUPPORT OF CAUSES OF ACTION, Defendant(s) all participated in a conspiracy to retaliate against any Inmate who attempted to challenge the unlawful and unconstitutional three tank dish cleaning process in the SCCC Kitchen, of which forces Inmates to ingest harmful and cancer causing pesticide sanitizer contaminating food trays, cups and sporks.

2.1 SCCC prison staff in concert with the SCCC Grievance department have a well established pattern of working together to deter SCCC Inmates from challenging any prison staff policy or conduct, no matter how patently unlawful and/or unconstitutional they are.

## THIRD CAUSE OF ACTION

Plaintiff(s) allege that Defendant(s) herein challenged conduct violated, and continues to violate, Plaintiff's First Amendment right of access to our courts, and Fourth Amendment right to be free from unlawful seizure of Plaintiff(s) legal property, of the United States Constitution's rights and protections, by seizing the legal files and records necessary to further the litigation already in progress, and by unlawfully destroying portions of said legal files and records.

3.1 As evidenced by above SYNOPSIS OF EXHIBITS IN SUPPORT OF CAUSES OF ACTION, Defendant(s) acting in concert with one another, have seized a substantial portion of the legal files and records underlying the litigation regarding the "UNLAWFUL AND UNCONSTITUTIONAL USE OF POISONOUS CHEMICALS TO SANITIZE POROUS INMATE FOOD TRAYS," and have not return it all to this date, of which in and of itself, may constitute a separate and distinct cover-up conspiracy, which will be a jury question material fact at issue to be resolved at trial by jury on the merits in this lawsuit.

3.2 Defendant(s) unlawful practice of preventing Inmates from working together to litigate legal actions against prison officials, such as challenging the unconstitutional risk to Plaintiff(s) health by forcing them to ingest pesticide residue on eating trays, cups and sporks.

Page 3

3.3   As   part   of   Defendant(s)   conspiracy   objectives, Defendant(s) issue prisoners who attempt to work together to challenge   prison   staff   conduct,   serious   infractions   in attempt to deter Inmates from working together to challenge prison staff conduct.

### FOURTH CAUSE OF ACTION

Plaintiff(s)   allege   that   Defendant(s)   herein   challenged conduct   violated   Plaintiff's   Fifth   Amendment's   "takings clause"   protection   against   seizure   by   government   without just compensation; and the Fourteenth Amendments due process and   equal   protection   clause   by   seizing   and   disposing   of Plaintiff's legal property without due process of law.

4.1 As evidenced by above SYNOPSIS OF EXHIBITS IN SUPPORT OF CAUSES OF ACTION, Defendant(s) acting in concert with one another, have seized legal files and records necessary to adequately advance the litigation concerning the Five Causes of Action herein presented, thereby said "taking" within the meaning of the Fifth Amendment of the Constitution of the United States, must be compensated for based on the amount of   ongoing   harm   Plaintiff(s)   suffer,   so   the   sooner Defendant(s)   return   the   seized   legal   files   and   records underlying   this   Civil   Rights   Complaint,   the   sooner   the ongoing "taking" injury will subside.

### FIFTH CAUSE OF ACTION

Plaintiff(s)   allege   that   Defendant(s)   herein   challenged conduct   violated   Article   I,   §   7   of   the   Washington Constitution in that Defendant(s) carried out their herein challenged conduct without authority of law, as well as in violation   of   clearly   established   Federal   statutory   and constitutional law.

5.1 As evidenced by above SYNOPSIS OF EXHIBITS IN SUPPORT OF CAUSES OF ACTION, Defendant(s) had no "lawful authority" to seized   the   legal   files   and   records   underlying   the   legal action regarding the unlawful and unconstitutional use of pesticide sanitizer contaminating food trays, see Appendix page   (96)   "INMATE   RIGHT   TO   POSSESS   OTHER   INMATE   LEGAL MATERIAL,"   page   (96-1)   "RIGHT   OF   GROUP   PETITION   IS   A CONSTITUTIONAL   GUARANTEE,"   page   (97)   "UNCONSTITUTIONAL "PRIOR RESTRAINT" ON SPEECH."

5.2   In   addition,   Plaintiff(s)   herein   advance   the   legal personage position that Article I, § 7 of the Washington Constitution   applies   and   provides   more   rights   and protections than the Fourth Amendment of the United States Constitution,   applicable   to   the   Federal   Constitutional protections under the Fourteenth Amendment, in part because the   Washington   State   prison   system   unlawfully   charges Inmates cost of incarceration which includes housing, food, medical,   etc.,   thereby   "lawful   authority"   must   be   present before any of these accommodations are infringed upon.

Page 4                         (19)

## SIXTH CAUSE OF ACTION

Plaintiff(s) allege that Defendants' herein challenged conduct, acting in concert with one another with purpose, violated Plaintiffs' First, Fifth, Eighth and Fourteenth Amendments of the United States Constitution by forcing Plaintiff(s) to undergo an unconstitutional risk of being infected with the deadly coronavirus, displaying deliberate indifference to Plaintiffs' safety in a prison environment where Plaintiff(s) have no control.

6.1 Plaintiff(s) herein allege that Defendants William Lane, Chandler Martin, Randal Miekler, Richard Estes, and Doug Matthews, in concert with one another, and with others, are engaged in conduct that places Plaintiff(s) at substantial unnecessary risk of being infected with coronavirus by not wearing facial coverings in violation of Governor Inslee's directive to wear a mask except when eating or drinking while at SCCC, setting the hot water temperature so high that Inmates have to crowd to take shower in violation of the six foot distance mandate, and to either not eat meals at the SCCC dinning hall or be forced to sit within thirty inches of another Inmate across the table without masks while eating, see pages (271-284); in violation of the First, Fifth, Eighth and Fourteenth Amendments of United States Constitution.

6.2 Herein named supervisory Defendant(s) were given Notice of the herein alleged constitutional wrongs and failed to take affirmative action to prevent furtherance of said constitutional wrongs in a concerted effort to cause Plaintiff(s) injury in violation of Title 42 U.S.C. §§ 1985 and 1986, and clearly established federal statutory and constitutional law,.

## SEVENTH CAUSE OF ACTION

Plaintiff(s) allege that Defendant(s) herein challenged conduct violated the First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution based on the alleged material fact that Defendants Donald Miller, David Partivi, and Jason Couey have participated in an unlawful conspiracy with other herein named Defendant(s), to accept approximately two hundred thousand dollars a year, to not provide Plaintiff(s) legal assistance with purpose to deprive Plaintiff(s) access to our courts, and to deny certain herein named Plaintiffs their right to enjoy the legal assistance of Alvin Hegge, as an overt act in furtherance of the conspiracy's objective to interfere with, obstruct and prevent Inmates from providing legal assistance to each other; thereby, inter alia, resulting in Plaintiffs Alvin Hegge, Jeffrey Ziegler, Brian Garvie and other Plaintiff(s), being unlawfully false imprisoned.

7.1 The State of Washington does not have competent jurisdiction over the incarceration of Alvin Hegge based on

Page 5                    (20)

Interstate Agreement on Detainers violations, see Appendix pages (296-312);

7.2 The State of Washington does not have competent jurisdiction over the incarceration of Jeffrey Ziegler based on relinquishment of criminal jurisdiction by vehicle of involuntary transfer outside the sovereign boundaries of the State of Washington with no valid due process to regain criminal jurisdiction;

7.3 The State of Washington lacks competent jurisdiction over the incarceration of Brian Garvie because he has already served the maximum sentence that could lawfully have been imposed; to which the contract attorney Defendant(s) have refused to provide legal assistance therefor, see Appendix pages (285-341), in addition to the other attached Exhibits.

## EIGHTH CAUSE OF ACTION

Plaintiff(s) allege that Defendant(s) herein challenged conduct violated Plaintiff(s) First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights that are guaranteed and protected by the Constitution of the United States, based on the alleged material fact that Defendants Jay Inslee, Robert Ferguson, Tim Thrasher, Steven Sinclair, John Aldana, Tomas P. Fithian, Ron Haynes, Jeneva Cotton, Scott Russell, Daniel Van Ogle, and others were all given Notice of the ongoing conspiracy to obstruct justice and deprive Plaintiff(s) of their clearly established statutory and constitutional rights within the zone of interest of Title 42 U.S.C. § 1985(2-3) and said Defendant(s), having the power to do so, failed to attempt to prevent said constitutional wrongs that were proximately causing Plaintiff(s) substantial injury, in violation of Title 42 U.S.C. § 1986, see Appendix pages (342-348).

8.1 Along with named Defendant(s) Richard Creatura and Tyler Compbell "having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [42 USCS § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do," have violated the spirit, intent and subject matter zone of interest of Title 42 U.S.C. § 1986, see Appendix pages (348-383); which includes cancelling and returning a check from Alvin Hegge to pay for his share of the filings fee, see Appendix pages (382-383).

8.2 The herein named Defendant(s) alleged participation in an unlawful conspiracy under the subject matter zone of interest of Title 42 U.S.C. § 1985(2-3), of which have the criminal counterpart of 18 U.S.C. §§ 241 and 242 makes any of the immunity doctrines such as qualified immunity, prosecutor immunity, judicial immunity, and/or any other relevant civil immunity inapplicable.

## SYNOPSIS OF EXHIBITS IN SUPPORT OF CAUSES OF ACTION

Plaintiff(s) have attached hereto, and hereby incorporate herein by reference, Exhibits (1) through (17) of which are pagnated sequentially as an Appendix hereto, in part because of the complex interwoven interdependent application of such relevant and material facts to the various causes of actions encompassed in this Tile 42 U.S.C. §§ 1983 and 1985 Civil Rights Complaint, premised on conspiracy, aider and abettor and principal theories of liability.

(1) Plaintiff(s) are herein alleging material facts supporting that each named Defendant has violated each named Plaintiff(s) rights privileges and immunities guaranteed and protected by the United States Constitution, that Plaintiff(s) have suffered and are suffering ongoing injury, that Defendant(s) have proximately caused Plaintiff(s) said injury, and that each named Defendant is being sued only in Defendant(s) individual capacity in this lawsuit, and Plaintiff(s) have introduced relevant evidence encompassed in attached Appendix, in support of said material facts at issue, see Appendix page 1 entitled: "LEGAL THEORY OF PROSECUTION WITH ATTACHED FACTUAL BASIS."

(2) Plaintiff(s) allege material facts that is using a pesticide sanitizer in violation of State and Federal Law by using the pesticide santizer on porous Inmate eating utensils, see Appendix pages (2-5) "KITCHEN SANITIZING DISHES RESEARCH," inter alia, based on the factual allegations found in Appendix pages (6-11) "UNLAWFUL AND UNCONSTITUTIONAL USE OF POISONOUS CHEMICALS TO SANITIZE POROUS INMATE FOOD TRAYS," page (8) in pertinent part:

### CONCLUSION

It is incumbent upon this Department of Correction Ombudsman Office to investigate and resolve the foregoing claims and issues, because as clearly evidenced by the foregoing, the SCCC Grievance Department is so corrupted by Grievance Coordinator McTarsney's conduct that it has become a sanctuary for unlawful and unconstitutional SCCC Staff conduct.

(3) Plaintiff(s) allege material facts that are encompassed in Tort Claim dated 11/17/16, see Appendix pages (12-17), claiming widespread "epidemic of Inmate medical problems caused by the unlawful use of said chemicals for months," making the State of Washington aware of said inherently dangerous use of pesticide chemicals to clean dishes Inmates have to eat from, e.g., page (17), in pertinent part:

### CONCLUSION

Complainants are currently at serious peril for both short term and long term adverse affects of the above

Page 1                    (22)

described chemicals being unlawfully and
unconstitutionally administered to Complainants through
contamination of porous plastic food trays, cups and
sporks; as it is well established that said chemicals
being unlawfully administered to Complainants are known
to cause cancer and other life threatening condition."

resulting in said Tort Claim being dismissed by WA Office of
Risk Management as the allegations and conduct not falling
under the purview of Chapter 4.92 RCW as not conducted
within official capacity legal personage of the person
committing the challenged conduct, see pages (18-19).

(4) Plaintiff(s) allege material facts that SCCC medical,
security and food service officials express consciousness of
guilt by feeding prison staff from paper plates while
refusing to allow Inmates to eat from paper plates, e.g.,
page (20-22).

(5) Plaintiff(s) allege material facts that a "FORMAL
COMPLAINT AGAINST STAFFORD CREEK CORRECTIONAL CENTER FOR
UNLAWFUL USE OF DANGEROUS CANCER CAUSING CHEMICALS" was sent
to WA Governor Inslee, WA Secretary of State, WA AG Robert
W. Ferguson, WA State Department of Health, EPA Washington
Operations Office, Grays Harbor County Health Department,
see Appendix pages (23-28), along with supporting evidence,
see pages (29-33); of which were received and responded to
in various ways, such as the Health Department lacks
jurisdiction, no name was provided for the Secretary of
State, WA Attorney General Office provides legal assistance
to Office of Risk Management who was not served, all
evidencing a callous disregard concerning violations of
Plaintiff(s) clearly established statutory and
constitutional rights, see Appendix pages (34-43). See also
pages (44-65) whereas WA Office of Risk Management
determined that the conduct alleged therein was individual
capacity conduct and did not fall within purview of Chapter
4.92 RCW official capacity legal personage.

(6) Plaintiff(s) allege material facts that WA DOC Ombudsman
Office was made aware of the threat to Inmate safety and
welfare concerning the "UNLAWFUL AND UNCONSTITUTIONAL USE OF
POISONOUS CHEMICALS TO SANITIZE POROUS INMATE FOOD TRAYS,"
and the deprivation of Inmate access to our courts rights to
seek relief and redress, compounded by the retalitory
conduct of Defendant(s), and the DOC Ombudsman Office chose
to ignore all the constitutional violations, see Appendix
pages (66-77).

(7) Plaintiff(s) allege material facts that a portion of
herein named Plaintiff(s) filed a Citizen Criminal Complaint
Under Provisions of CrRLJ 22.1(c) against numerous herein
named Defendant(s), claiming inter alia, that Defendant(s)
seized Alvin Hegge's legal files and records to prevent

Page 2

Plaintiff(s) from seeking relief and redress in our courts, inter alia, regarding the unlawful and dangerous to Inmate health, use of pesticides on porous food trays and drinking cups, filed against several herein named Defendant(s), pages (78-100). See also, Tort Claim filed by Alvin Hegge dated 1/22/18 requesting relief in the form of: "I am requesting one hundred dollars a day for each day I am deprived access to my legal documents seized on or about 1/18/17, 5/6/17 and 8/15/17, Appendix pages (100-110). See also Tort Claim filed by Alvin Hegge, dated 5/14/18 encompassing the legal files and records of several herein named Plaintiff(s), see pages (117-118) identifying numerous Inmates who had their legal files and records seized from the prison cell of Alvin Hegge, inter alia, to prevent advancement of litigation regarding the inherently dangerous SCCC dish cleaning practices, that causes Plaintiff(s) to have to consume harmful chemicals mixed in with their food, see pages (111-119).

(9) Plaintiff(s) allege material facts that Plaintiff(s) have made the WA Governor's Ombuds Office aware of the unlawful and unconstitutional dish washing practices in the SCCC kitchen, by document entitled: "REQUEST FOR IDENTIFICATION OF PROPER GRIEVANCE PROCESS FOR FILING GRIEVANCE AGAINST SCCC FOOD SERVICES, DATED 7/4/19, see Appendix pages (119-120); and based on the Governor's Ombuds Office failing to prevent further ongoing injury of Plaintiff(s), Alvin Hegge filed another Tort claim, Appendix pages (122-129), in part, attempting to resolve the inherent legal personage questions underlying this lawsuit, wherein Alvin Hegge stated in pertinent part:

(page 1):
     Above named Defendant (s) are each sued only in their Official Capacity which as matter of law is a lawsuit against DOC State of Washington and/or other Washington State agencies, based on Policy and Policy Maker liability conferring competent jurisdiction upon the Department of Enterprise Services Risk Management Division for determination as an essential condition precedent to filing a State or Federal Title 42 U.S.C. § 1983 Civil Rights Complaint, relevant to the Eleventh Amendment of the United States Constitution where immunity lies only in federal court; with Claimant(s) herein requesting specific legal personage determination regarding each named Defendant.

(page 8)
     Above named Complainant(s) are suffering current, ongoing and long term injury proximately caused by SCCC-CI Kitchen unlawful and unconstitutional above described conduct and procedures material to the cleaning and sanitizing of the food trays, sporks and cups SCCC Inmates are forced to consume food with.

Page 3                    (24)

Complainant(s) have exhausted all administrative remedies within the meaning of the federal Prison Litigation Reform Act for the past three years and so far Defendant(s) have ignored facts and circumstances giving rise to this Tort Claim.

It is unclear to Complainant(s) whether or not Washington Department of Corrections is directly and/or indirectly responsible for Complainant(s) above described short term and potential long term injury; and/or whether of not Correctional Industries is solely responsible for Complainant(s) above described injury for failing to correct the above described SCCC Kitchen Health Hazard.

It is further unclear why the Grays Harbor and Washington State Health Departments failed to investigate and correct the above described health hazard problems after being informed thereof in 2016 by Formal Complaints filed by Alvin Hegge; however, it is clear to Complainant(s) that above named DOC Defendant(s) relying on alleged approval by said Health Departments of the dish cleaning system, confers vicarious liability upon said two Health Departments constituting a proximate cause of the injuries suffered by Complainants.

See also, Appendix pages (130-135), a document entitled "NOTICE OF SEVERE HEALTH HAZARD AT SCCC-CI FOOD SERVICE," sent to Governor Jay Inslee et al., inter alia, explaining that the three tank dish washing system being utilized effectively causes Inmates to have to ingest the harmful pesticide chemicals while at the same time diluting the sanitizer that is supposed to kill the harmful bacteria.

(10) Plaintiff(s) allege material facts that although the Department of Enterprise Services, Office of Risk Management did provide Tort Claim #3101000297, they claimed lack of evidence, having denied several previous Tort Claims, but then requested more documentation, see Appendix (136); which was provided comprehensively by Alvin Hegge, see Appendix pages (137-170); and then never followed through with an investigation, see Appendix pages (171-197).

(11) Plaintiff(s) allege material facts that Plaintiff(s) have overwhelmingly exhausted the DOC-SCCC Grievance process as clearly and conclusively evidenced by Appendix pages (198-267), of which also evidences Defendant(s) callous disregard and deliberate indifference to Inmate safety and welfare free from improper serious health risk as herein alleged; carried out and accomplished by vehicle of Defendant(s) agreement and acting in concert with one another to deprive Plaintiff(s) of access to our courts rights for the purpose of seeking relief and redress.

Page 4

## SCCC DISH CLEANING PROCESS SPREADS CONTAGIOUS VIRUSES

The SCCC three compartment Food Service dish cleaning process, allegedly approved by the Washington State Health Department, creates a vehicle of transmission for contagious diseases and viruses such as the deadly Coronavirus that has no vaccine to prevent it, of which has recently killed numerous elderly people at care centers in the State of Washington. Said Coronavirus is especially deadly to elderly persons such as the elderly Inmates currently incarcerated at Stafford Creek Corrections Center.

It is well established that Coronavirus can be transferred from one host to another by vehicle of a person touching an object that someone infected with Coronavirus had touched, such as Inmates working in food service touching the food trays, sporks, and cups when conducting the three compartment dish cleaning process.

Said three department dish cleaning process used at SCCC Food Services is as follows: (1) The food trays, sporks and cups are placed in the SCCC dish pit area by Inmates when they finish eating off of them; (2) The dishes (food trays, sporks and cups) are then sprayed off by an Inmate handling them and given to Inmate at the soap compartment where that Inmate is supposed to scrub them; (3) the dishes are then lifted out of the soap cleaning tank with the grease and soap floating on the top being reintroduced to the dishes and then dipped in the so-called rinse tank which is continually polluted with grease and soap residue transferred from the soap tank; (4) An Inmate then lifts the dishes out of the rinse tank and in doing so reintroduces the grease and soap residue floating on top of the rinses tank; (5) The dishes are then submerged in the sanitizer tank for a few seconds contaminating and diluting the sanitizer with the soap and grease residue introduced from the soap and rinse tanks, thereby neutralizing the sanitizing function which is supposed to kill harmful bacteria and viruses; (6) The dishes are then placed on drying racks where the grease residue and soap coating the dishes remains undried on the dishes; (7) The directions on the sanitizer state that: (a) it is very caustic and harmful when ingested and/or has contact with the eyes; (b) the directions state to not use the sanitizer on porous surfaces such as the food trays, sporks, and cups used at SCCC Food Service; (c) the dishes must be submerged in the sanitizer for sixty seconds in order to kill the harmful bacteria and virus germs; all of which results in the functional purpose of the sanitizer being non-existent with all of the harm caused by forcing Inmates to ingest the contaminated sanitizer, soapy, greasy residue that is replete with any harmful bacteria and/or virus germs being forced on Inmates that will undoubtedly cause every Inmate at SCCC to be injured, and maybe killed, by the Coronavirus.

(26)

(12) Plaintiff(s) herein allege all of the material facts encompassed in attached Exhibit (18), (Appendix pages 271-284), that Defendants William Lane, Chandler Martin, Randal Miekler, Richard Estes, and Doug Matthews, in concert with one another, and with others, are engaged in conduct that places Plaintiff(s) at substantial unnecessary risk of being infected with coronavirus by not wearing facial coverings in violation of Governor Inslee's directive to wear a mask except when eating or drinking while at SCCC, setting the hot water temperature so high that Inmates have to crowd to take shower in violation of the six foot distance mandate, and to either not eat meals at the SCCC dinning hall or be forced to sit within thirty inches of another Inmate across the table without masks while eating, see pages (271-284),

(13) Plaintiff(s) herein allege all of the material facts encompassed in attached Exhibit (19), (Appendix pages 285-341), that Defendants Donald Miller, David Partivi, and Jason Couey have participated in an unlawful conspiracy with other herein named Defendant(s), to accept approximately two hundred thousand dollars a year, to not provide Plaintiff(s) legal assistance with purpose to deprive Plaintiff(s) access to our courts, to deny certain herein named Plaintiffs their right to enjoy the legal assistance of Alvin Hegge, as an overt act in furtherance of the conspiracy's objective to interfere with, obstruct and prevent Inmates from providing legal assistance to each other; thereby, inter alia, resulting in Plaintiffs Alvin Hegge, Jeffrey Ziegler, Brian Garvie and other Plaintiff(s), being unlawfully false imprisoned, for example: the State of Washington does not have competent jurisdiction over the incarceration of Alvin Hegge based on Interstate Agreement on Detainers violations, see Appendix pages (296-312); the State of Washington does not have competent jurisdiction over the incarceration o Jeffrey Ziegler based on relinquishment of criminal jurisdiction by vehicle of involuntary transfer outside the sovereign boundaries of the State of Washington with no valid due process to regain criminal jurisdiction; and the State of Washington lacks competent jurisdiction over the incarceration of Brian Garvie because he has already served the maximum sentence that could lawfully be imposed; to which the contract attorney Defendant(s) have refused to provide legal assistance therefor, see Appendix pages (285-341), in addition to the other attached Exhibits.

(14) Plaintiff(s) herein allege all of the material facts encompassed in attached Exhibit (20), (Appendix pages (342-383), that Defendants Jay Inslee, Robert Ferguson, Tim Thrasher, Steven Sinclair, John Aldana, Tomas P. Fithian, Ron Haynes, Jeneva Cotton, Scott Russell, Daniel Van Ogle, and others were all given Notice of the ongoing conspiracy to obstruct justice and deprive Plaintiff(s) of their clearly established statutory and constitutional rights within the zone of interest of Title 42 U.S.C. § 1985(2-3)

and said Defendant(s), having the power to do so, failed to attempt to prevent said constitutional wrongs that were proximately causing Plaintiff(s) substantial injury, in violation of Title 42 U.S.C. § 1986, see Appendix pages (342-348); along with named Defendant(s) Richard Creatura and Tyler Compbell "having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [42 USCS § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do," have violated the spirit, intent and subject matter zone of interest of Title 42 U.S.C. § 1986, see Appendix pages (348-383); which includes returning a check from Alvin Hegge to pay for his share of the filings fee, see Appendix pages (382-383).

(15) As clearly and conclusively evidenced by attached Appendix (101-119), the seizure of Plaintiff(s) legal files and records as an overt act in furtherance of Defendant(s) participation in a conspiracy to obstruct justice and deny Plaintiff(s) their clearly established statutory and constitutional right of access to our courts, conclusively results in Defendant(s) individual capacity liability in the civil rights action. As further clearly and conclusively evidenced by attached Appendix pages (78-100), entitled "CITIZEN CRIMINAL COMPLAINT UNDER PROVISIONS OF CrRLJ 22.1(c) FOR VIOLATIONS OF: RCW 9A.80.010; RCW 42.20.100; RCW 9A.28.040; RCW 9A.08.020; RCW 9A.56.050; RCW 9A.56.170; RCW 9A.76.175; RCW 42.20.040; RCW 42.20.050; RCW 9A.67.090; RCW 9A.72.150; RCW 9A.72.120, of which are all Washington State Criminal statutes alleged to have been violated by the therein named Defendant(s), see Appendix pages (78-92), who for the most part are Defendant(s) in this Civil Rights Complaint, results in only individual capacity legal personage where there is no applicability of any of the immunity doctrines. This is especially true when as in this Civil Rights Complaint, inter alia, under the subject matter zone of interest of Title 42 U.S.C. § 1985(2-3) to which the federal criminal counter part is Title 18 U.S.C. §§ 241 and 242, among violations of numerous other federal criminal statutes germane to this action, cf., Popasan v. Allain, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)("As the Court explained in Young [Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)] itself: 'If the act which the State Attorney General seeks to enforce be a violation of the Federal Constitution the officer proceeding under such enactment comes into conflict with the superior authority of the Constitution, and he is in that case stripped of his official representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States. Id. at 159-160, 52 L.Ed. 714, 28 S.Ct. 441. Thus, the official although acting in his official capacity, may be sued in federal court").

## CLASS REPRESENTATIVE HEGGE REQUESTS CLASS CERTIFICATION

Herein class representative Alvin Hegge intends to pay the full four hundred dollar filing fee as soon as a Cause Number has been assigned.

The eighteen above named Plaintiffs are joined as a portion of the potential Class Action Plaintiffs within the purview and subject matter zone of interest encompassed in Fed.R.Civ.P. Rule 23. Class Actions.

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claim or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The herein named nineteen Inmates at Stafford Creek Corrections Center (hereafter SCCC) are representative of the two thousand Inmates incarcerated at SCCC which are too many to name in one action, and there are questions of law and fact common to the class.

This District Court is required to determine by order whether or not to certify the class of incarcerated individuals at SCCC, and/or whether or not the eighteen individuals should be certified as a subclass or other, see Fed.R.Civ.P. Rule 23:

(c) Determining by Order Whether to Certify a Class Action; Appointing Class Counsel; Notice and Membership in Class; Judgment; Multiple Classes and Subclasses.

(1)(A) When a person sues or is sued as a representative of a class, the court must at any early practicable time-determine by order whether to certify the action as a class action.

(B) An order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).

(g) Class Counsel.

(1) Appointing class Counsel.

(A) Unless statute provides otherwise, a court that certifies a class must appoint class counsel.

(29)

ADVISORY COMMITTEE NOTES

   Note to Subdivision (a). This is a substantial restatement of [former] Equity Rule 34 (Representatives of Class) as that rule has been construed. It applies to all actions, whether formerly denominated legal or equitable.... The general test of [former] Equity Rule 34 (Representatives of class) that the question should be "one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court," in a common test.... The rule adopts the test of [former] Equity Rule 38, but defines what constitutes a "common or general interest."

## RELIEF SOUGHT

   Plaintiff(s) demand trial by jury on all material facts at issue pursuant to the Seventh Amendment of the United States Constitution.

   Each above named Plaintiff seeks one thousand dollars a day for each day he was forced to eat of of the trays, sporks, and cups since the dishwasher was removed from SCCC Food Services.

   Each above named Plaintiff seeks an amount of money from Defendant(s) to be determined by the jury at trial on the merits for future potential injury in the form of cancer or other injury proximately caused from Plaintiff(s) being forced to ingest sanitizer, detergent and grease not removed from the food trays, sporks, and cups during the dish cleaning process.

   Each above named Plaintiff seeks an amount of money from Defendant(s) to be determined by the jury at trial on the merits for all other claims herein encompassed.

   Herein named Alvin Hegge, Jeffrey Ziegler, and Brian Garvie are seeking two million dollars from Defendant Contract Attorneys Donald Miller, David Partovi, and Jason Couey for injury suffered from false imprisonment.

## DECLARATION:

   We, the undersigned, being aware of penalties for perjury and the laws of the state of Washington, hereby declare that I have read the foregoing Civil Rights Complaint and attached Appendix (1-383), and believe everything therein to be true and correct, based on personal knowledge and/or information and belief.

           Dated this 7th day of November, 2020.

                   SWORN TO BY: _Alvin Hegge_
                                ALVIN HEGGE

By: _____          By: _____
    JEFFREY ZIEGLER                      RYAN GENTZLER

By: _____          By: _____
    EUGENE GAVIE                         STEVEN BURR

By: _____          By: _____
    JOSH HEGRE                           THOMAS GILBERT

By: _____          By: _____
    CHRISTOPHER SHADE                   SERGIO PERALTA

By: _____          By: _____
    JOSEPH MOORE                         BRIAN CHAMPACO

By: _____          By: _____
    RANDY DEMARAY                        PAT NELSON

By: _____          By: _____
    JACOB CLARK                          DARRIN MAIDEN

By: _____          By: _____
    WILLIAM RICHIE                       FRANK DOLAN

By: _____          By: _____
    DAVID FISHER                         ROBERT THIERY

By: _____          By: _____
    Andrew Skyberg

By: _____          By: _____
    CHRISTOPHER BOWMAN

By: _____          By: _____

By: _____          By: _____

By: _____          By: _____

By: _____          By: _____

By: _____          By: _____